**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF WASHINGTON**

|  | Case No. 14-CV-03116-VEB |
|---|---|
| LESTER LEINGANG,<br><br>                    Plaintiff,<br><br>vs.<br><br>CAROLYN W. COLVIN, Acting<br>Commissioner of Social Security,<br><br>                    Defendant. | DECISION AND ORDER |

## I. INTRODUCTION

In November of 2010, Plaintiff Lester Leingang applied for supplemental security income ("SSI") benefits.  The Commissioner of Social Security denied the application.

Plaintiff, represented by D. James Tree, Esq., commenced this action seeking judicial review of the Commissioner's denial of benefits pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3). The parties consented to the jurisdiction of a United States Magistrate Judge. (Docket No. 6).

On March 30, 2015, the Honorable Rosanna Malouf Peterson, Chief United States District Judge, referred this case to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket No. 21).

## II. BACKGROUND

The procedural history may be summarized as follows:

Plaintiff applied for SSI benefits on November 4, 2010. (T at 174-80).[1] The application was denied initially and on reconsideration. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). On August 20, 2012, a hearing was held before ALJ Ilene Sloan. (T at 49). Plaintiff appeared with his attorney and testified. (T at 58-76). The ALJ also received testimony from Paul Prachyl, a vocational expert (T at 78-87). On August 30, 2012, ALJ Sloan issued a written decision denying the application for benefits and finding that Plaintiff was not disabled within the meaning of the Social Security Act. (T at 23-48). The ALJ's

---

[1] Citations to ("T") refer to the administrative record at Docket No. 11.

DECISION AND ORDER – LEINGANG v COLVIN 14-CV-03116-VEB

decision became the Commissioner's final decision on June 20, 2014, when the Appeals Council denied Plaintiff's request for review. (T at 1-6).

On August 19, 2014, Plaintiff, acting by and through his counsel, timely commenced this action by filing a Complaint in the United States District Court for the Eastern District of Washington. (Docket No. 4). The Commissioner interposed an Answer on November 3, 2014. (Docket No. 10).

Plaintiff filed a motion for summary judgment on February 2, 2015. (Docket No. 15). The Commissioner moved for summary judgment on March 10, 2015. (Docket No. 19). Plaintiff filed a Reply on March 30, 2015. (Docket No. 23).

For the reasons set forth below, the Commissioner's motion is denied, Plaintiff's motion is granted, and this case is remanded for further proceedings.

DECISION AND ORDER – LEINGANG v COLVIN 14-CV-03116-VEB

# III. DISCUSSION

## A.    Sequential Evaluation Process

The Social Security Act ("the Act") defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act also provides that a plaintiff shall be determined to be under a disability only if any impairments are of such severity that a plaintiff is not only unable to do previous work but cannot, considering plaintiff's age, education and work experiences, engage in any other substantial work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Thus, the definition of disability consists of both medical and vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920. Step one determines if the person is engaged in substantial gainful activities. If so, benefits are denied. 20 C.F.R. §§ 404. 1520(a)(4)(i), 416.920(a)(4)(i). If not, the decision maker proceeds to step two, which determines whether plaintiff has a medially severe impairment or combination of impairments. 20 C.F.R. §§

4

404.1520(a)(4)(ii), 416.920(a)(4)(ii).

If plaintiff does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment is severe, the evaluation proceeds to the third step, which compares plaintiff's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); 20 C.F.R. § 404 Subpt. P App. 1. If the impairment meets or equals one of the listed impairments, plaintiff is conclusively presumed to be disabled. If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents plaintiff from performing work which was performed in the past. If a plaintiff is able to perform previous work that plaintiff is deemed not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At this step, plaintiff's residual functional capacity (RFC) is considered. If plaintiff cannot perform past relevant work, the fifth and final step in the process determines whether plaintiff is able to perform other work in the national economy in view of plaintiff's residual functional capacity, age, education and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

The initial burden of proof rests upon plaintiff to establish a *prima facie* case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The initial burden is met once plaintiff establishes that a mental or physical impairment prevents the performance of previous work. The burden then shifts, at step five, to the Commissioner to show that (1) plaintiff can perform other substantial gainful activity and (2) a "significant number of jobs exist in the national economy" that plaintiff can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

**B.    Standard of Review**

Congress has provided a limited scope of judicial review of a Commissioner's decision. 42 U.S.C. § 405(g). A Court must uphold a Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence. *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). "The [Commissioner's] determination that a plaintiff is not disabled will be upheld if the findings of fact are supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983)(citing 42 U.S.C. § 405(g)). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n 10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-02 (9th Cir. 1989).

Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971)(citations omitted). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Mark v. Celebreeze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the Court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989)(quoting *Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the Commissioner, not this Court, to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. If evidence supports more than one rational interpretation, the Court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-30 (9th Cir. 1987).

DECISION AND ORDER – LEINGANG v COLVIN 14-CV-03116-VEB

## C.    Commissioner's Decision

The ALJ found that Plaintiff had not engaged in substantial gainful activity since November 4, 2010 (the application date). The ALJ determined that Plaintiff had the following severe impairments: chronic obstructive pulmonary disease (COPD), human immunodeficiency virus (HIV), hepatitis C infection, bipolar disorder versus depressive disorder (NOS), anxiety disorder NOS, personality disorder NOS, and polysubstance dependence and/or abuse (intermittent remission). (T at 28).

However, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments set forth in the Listings. (T at 29).

The ALJ found Plaintiff had the residual functional capacity ("RFC") to perform light work, as defined in 20 CFR §416.967 (b), with the following limitations: he must avoid concentrated exposure to industrial fumes, odors, gases, and poor ventilation; he can understand, remember, and carry out simple and routine work; he has an average ability to perform sustained work activities; he can have occasional, superficial contact with the general public. (T at 31).

The ALJ determined that Plaintiff was unable to perform his past relevant work as an automotive body repairer/helper. (T at 41). Considering Plaintiff's age

(46 on the application date), education (high school), work experience, and RFC, the ALJ determined that there were jobs that exist in significant numbers in the national economy that Plaintiff can perform. (T at 42).

As such, the ALJ concluded that Plaintiff had not been disabled under the Social Security Act from November 4, 2010 (the application date) through October 30, 2012 (the date of the ALJ's decision) and was therefore not entitled to benefits. (Tr. 42-43). As noted above, the ALJ's decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review. (Tr. 1-6).

## D.    Plaintiff's Arguments

Plaintiff contends that the Commissioner's decision should be reversed. He offers three principal arguments in support of his position. First, he argues that the ALJ did not properly assess the medical opinion evidence. Second, he contends that the ALJ did not conduct a proper substance abuse analysis. Third, Plaintiff asserts that the ALJ improperly restricted the vocational expert's testimony. This Court will address each argument in turn.

### 1.        Medical Opinion Evidence

In disability proceedings, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion is given more weight than that of a non-examining physician. *Benecke v. Barnhart*,

DECISION AND ORDER – LEINGANG v COLVIN 14-CV-03116-VEB

379 F.3d 587, 592 (9th Cir. 2004); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). If the treating or examining physician's opinions are not contradicted, they can be rejected only with clear and convincing reasons. *Lester*, 81 F.3d at 830. If contradicted, the opinion can only be rejected for "specific" and "legitimate" reasons that are supported by substantial evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995). Historically, the courts have recognized conflicting medical evidence, and/or the absence of regular medical treatment during the alleged period of disability, and/or the lack of medical support for doctors' reports based substantially on a claimant's subjective complaints of pain, as specific, legitimate reasons for disregarding a treating or examining physician's opinion. *Flaten v. Secretary of Health and Human Servs.*, 44 F.3d 1453, 1463-64 (9th Cir. 1995).

An ALJ satisfies the "substantial evidence" requirement by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014)(quoting *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)). However, "[t]he ALJ must do more than state conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id.*

DECISION AND ORDER – LEINGANG v COLVIN 14-CV-03116-VEB

###### a.    Dr. Barg

In July of 2012, Dr. Neil Barg, Plaintiff's treating physician, completed a medical report.  Dr. Barg noted that Plaintiff suffered from depression, insomnia, and body aches.  He opined that "at this point – work does not seem as though it's something [Plaintiff] can manage." (T at 520-21).

The ALJ gave little weight to Dr. Barg's opinion, stating that the physician had not examined Plaintiff since April 2003 and that the doctor's opinion was unsupported by objective evidence. (T at 38).  The ALJ also referenced an August 2004 report, wherein Dr. Barg opined that Plaintiff could perform medium work. (T at 38, 325).  The ALJ noted that Dr. Barg had not explained why his opinion with regard to Plaintiff's limitations had changed since 2004, and discounted the more recent opinion on that basis. (T at 38).

The ALJ's assessment of Dr. Barg's opinion is problematic.  Although it is unclear whether Dr. Barg actually "examined" Plaintiff after April 2003, there is ample evidence that Dr. Barg actively managed Plaintiff's care between 2003 and 2012. (T at 306-08, 353, 359-63, 370-72, 375-81, 450-60, 461-63, 464-72, 476-79, 517, 520-21).  A patient health summary note from April of 2011 identified Dr. Barg as Plaintiff's primary care physician. (T at 370).  Dr. Barg himself reported the first and last dates of treatment as "7/29/04 – 6/25/12." (T at 520).  The ALJ simply

stated that Dr. Barg had "no documented examination of [Plaintiff]," (T at 38) without making it clear that she recognized and considered the evidence demonstrating that Dr. Barg was actively involved in managing and monitoring Plaintiff's care for an extended time period.

Moreover, the ALJ believed that Dr. Barg's opinion was based "heavily" on Plaintiff's self-reports (T at 38), a conclusion that is difficult to reconcile with the extensive history and treating relationship, which (as noted above) the ALJ did not discuss.

This undermines confidence in the ALJ's assessment.  Although Dr. Barg's July 2012 opinion was, indeed, not particularly detailed, given the long-term treating relationship and the consistency between this opinion and evidence from other medical sources (discussed further below), the ALJ should have re-contacted Dr. Barg for a further explanation.

There is no question that "the ALJ has a duty to assist in developing the record." *Armstrong v. Commissioner of Soc. Sec. Admin.*, 160 F.3d 587, 589 (9th Cir. 1998); 20 C.F.R. §§ 404.1512(d)-(f); *see also Sims v. Apfel*, 530 U.S. 103, 110-11, 147 L. Ed. 2d 80, 120 S. Ct. 2080 (2000) ("Social Security proceedings are inquisitorial rather than adversarial. It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits . . . .").

This duty includes an obligation to re-contact a treating physician when the basis for his or her opinion in unclear. *See* SSR 96-5p ("[I]f the evidence does not support a treating source's opinion . . . and the [ALJ] cannot ascertain the basis of the opinion from the case record, the [ALJ] must make every reasonable effort to re-contact the source for clarification of the reasons for the opinion."). While a treating physician's opinion may be rejected if it is inadequately supported, the physician should be re-contacted where, as here, the evidence of disability is ambiguous. *See Estrada v. Astrue*, No EDCV 07-01226, 2009 U.S. Dist. LEXIS 15824, at *11 (C.D. Cal. Feb. 25, 2009).

In addition, even without the need for further development of the record, a remand would be needed to allow the ALJ to clarify her understanding of the treating relationship and, if necessary, modify her assessment based upon a correct understanding of Dr. Barg's connection with Plaintiff's medical care.

### b.       Dr. Barnard

In June of 2012, Dr. Philip Barnard, an examining psychologist, completed a psychological/psychiatric evaluation. He diagnosed bipolar disorder, NOS; alcohol abuse (in partial remission); attention deficit hyperactivity disorder/combined type; and personality disorder, not otherwise specified. (T at 335). He assigned a Global

Assessment of Functioning ("GAF") score[2] of 60 (T at 336), which is indicative of moderate symptoms or difficulty in social, occupational or educational functioning. *Amy v. Astrue*, No. CV-11-319, 2013 U.S. Dist. LEXIS 2297, at *19 n.2 (E.D.Wa Jan. 7, 2013). Dr. Barnard opined that with Plaintiff's "easy fatigability, it is not probable that he could be gainfully employed in any capacity." (T at 336).

The ALJ afforded little weight to Dr. Barnard's opinion on the grounds that he only examined Plaintiff once and did not review any medical records. (T at 40). The ALJ also noted that Plaintiff did not acknowledge recent substance abuse to Dr. Barnard. (T at 41). In addition, the ALJ found Dr. Barnard's GAF score of 60, which indicated moderate symptoms, inconsistent with his assessment of disabling impairments. (T at 41). Thus, the ALJ concluded that Dr. Barnard's opinion was based primarily on Plaintiff's self-reports, which the ALJ found incredible. (T at 41).

However, the ALJ's assessment was flawed. Dr. Barnard obtained a detailed history, including the fact that Plaintiff was homeless at the time of the evaluation. (T at 336). He noted that Plaintiff had previously been awarded Social Security disability benefits, but lost those benefits after being incarcerated. (T at 336). Dr. Barnard conducted a mental status examination, wherein Plaintiff was observed to

---

[2] "A GAF score is a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment." *Vargas v. Lambert*, 159 F.3d 1161, 1164 n.2 (9th Cir. 1998).

DECISION AND ORDER – LEINGANG v COLVIN 14-CV-03116-VEB

be cooperative and compliant, but with depressed mood and rapid, rambling speech. (T at 337).  Moreover, the ALJ's decision to discount Dr. Barnard's opinion did not account for the consistency of his opinion with Dr. Barg's assessment and the other opinions discussed below.

### c.    Moen/Anderson

In January of 2011, Dick Moen, an examining therapist, completed a psychological/psychiatric evaluation, in which he diagnosed bipolar 1, mixed and generalized anxiety disorder, ADHD, NOS. (T at 340).  He assigned a GAF score of 50 (T at 341), which is indicative of serious impairment in social, occupational or school functioning. *Onorato v. Astrue,* No. CV-11-0197, 2012 U.S. Dist. LEXIS 174777, at *11 n.3 (E.D.Wa. Dec. 7, 2012).  Mr. Moen assessed marked limitation with regard to Plaintiff's ability to perform routine tasks without undue supervision and maintain appropriate behavior. (T at 341).

In August of 2012, Russell Anderson, a licensed clinical social worker, completed an initial mental health assessment of Plaintiff.  He assigned a GAF score of 41 (T at 524), which is indicative of serious impairment in social, occupational or school functioning.  Mr. Anderson opined that Plaintiff was "at risk of continued depression and further decompensation of functioning . . . ." (T at 524).  Mr. Anderson noted Plaintiff had "[h]igh risk diagnoses," along with a "history of

DECISION AND ORDER – LEINGANG v COLVIN 14-CV-03116-VEB

suicidal thinking, history of suicide attempts, history of substance abuse, and chronic medical problems associated with AIDS, and a little family support." (T at 523).

In evaluating a claim, the ALJ must consider evidence from all of the claimant's medical sources. 20 C.F.R. §§ 404.1512, 416.912. Medical sources are divided into two categories: "acceptable" and "not acceptable." 20 C.F.R. § 404.1502. Acceptable medical sources include licensed physicians and psychologists. 20 C.F.R. § 404.1502. Medical sources classified as "not acceptable" (also known as "other sources") include nurse practitioners, therapists, licensed clinical social workers, and chiropractors. SSR 06-03p. The opinion of an acceptable medical source is given more weight than an "other source" opinion. 20 C.F.R. §§ 404.1527, 416.927. For example, evidence from "other sources" is not sufficient to establish a medically determinable impairment. SSR 06-03p. However, "other source" opinions must be evaluated on the basis of their qualifications, whether their opinions are consistent with the record evidence, the evidence provided in support of their opinions and whether the source is "has a specialty or area of expertise related to the individual's impairment." *See* SSR 06-03p, 20 CFR §§404.1513 (d), 416.913 (d). The ALJ must give "germane reasons" before discounting an "other source" opinion. *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993).

The ALJ assigned minimal weight to Mr. Moen's assessment, finding it based primarily on Plaintiff's self-reports. (T at 39).  However, Mr. Moen also referenced his clinical observations, which included Plaintiff having difficulty staying on task. (T at 424).  Further, Mr. Moen did not accept Plaintiff's self-report in at least one respect.  Although Plaintiff said he could learn new tasks, Mr. Moen did not accept this report, assessing a moderate limitation with regard to Plaintiff's ability to learn new tasks due to distractibility related to bipolar symptoms and AD/HD. (T at 425).  In addition, the ALJ did not address the consistency between the opinion provided by Mr. Moen and the assessments of Dr. Barg and Dr. Barnard.  The ALJ did not provide legally sufficient reasons for discounting Mr. Moen's opinion.

The ALJ did not address Mr. Anderson's opinion at all, which is a further error providing a reason for remand.

### d.    Dr. Suiter & Dr. Reznicek

Two doctors, Dr. Michael Reznicek and Dr. Elizabeth Suiter, treated Plaintiff between December of 2009 and October of 2010, when he was incarcerated at the Coyote Ridge Corrections Center (immediately prior to the time period relevant to this case, which began on November 4, 2010).  Dr. Reznicek, a psychiatrist, noted that Plaintiff had "some positive employment history," but found that he "lacks volition" and was "socially inept, anti-social," and "unlikely to stay sober for a

traditional work setting . . . ." (T at 406).    The record also included several assessments and treatment notes from Dr. Suiter, a physician.  In May of 2010, Dr. Suiter noted that Plaintiff was improving with Lithium treatments, but still had "some depressive symptoms." (T at 390).  In June of 2010, Dr. Suiter reported that she was worried about Plaintiff's behavior, noting episodes of hypermania. (T at 387).

The ALJ did not expressly reference Dr. Suiter, but did cite her treatment notes on several occasions. (T at 29, 30, 33, 35).  The referenced Dr. Reznicek's treatment notes, in which the doctor opined that Plaintiff's history was not consistent with bipolar disorder and that he had "normal affect, good humor, and an engaging demeanor." (T at 34, 405, 408, 411-12).  The ALJ relied on these reports to discount Plaintiff's claims of disabling impairments. (T at 34).   However, the ALJ gave minimal weight to Dr. Reznicek's conclusion that Plaintiff's substance abuse prevented a return to gainful employment. (T at 38).  The ALJ's consideration of Plaintiff's substance abuse was flawed for the reasons outlined below.  Thus, the decision to discount Dr. Reznicek's conclusion was flawed and will need to be revisited as part of a proper substance abuse analysis on remand.

DECISION AND ORDER – LEINGANG v COLVIN 14-CV-03116-VEB

## 2.        Substance Abuse Analysis

When a Social Security disability claim involves substance abuse, the ALJ must first conduct the general five-step sequential evaluation without determining the impact of substance abuse on the claimant. If the ALJ finds that the claimant is not disabled, then the ALJ proceeds no further.  If, however, the ALJ finds that the claimant is disabled, then the ALJ conducts the sequential evaluation and second time and considers whether the claimant would still be disabled absent the substance abuse.  *See Bustamente v. Massanari*, 262 F.3d 949, 955 (9th Cir. 2001), 20 CFR § 404.1535.  The claimant bears the burden at steps 1-4 of the second sequential analysis of showing substance abuse is not a "contributing factor material to his disability." *Hardwick v. Astrue*, 782 F. Supp. 2d 1170, 1177 (E.D.Wa. 2011)(citing *Parra v. Astrue*, 481 F.3d 742, 748 (9th Cir. 2007)).

Here, the ALJ concluded that Plaintiff's substance abuse (which included alcohol and illegal drugs) "likely caused some functional difficulties." (T at 34). However, the ALJ found that substance abuse did not "materially affect [Plaintiff's] ability to perform gainful activity." (T at 34).  The ALJ determined that Plaintiff's substance abuse damaged his credibility and likely exacerbated the symptoms complained of, *i.e.*, fatigue, irregular sleep, respiratory difficulties, anxiety, and depression. (T at 35).  However, the record indicated that Plaintiff's symptoms

DECISION AND ORDER – LEINGANG v COLVIN 14-CV-03116-VEB

persisted even when he was incarcerated and known to be clean and sober. (T at 385, 389, 390, 398, 405, 406, 411, 412).

Moreover, the medical opinions of record uniformly concluded that Plaintiff's combination of medical problems and substance abuse were, in fact, disabling. Dr. Barg, who had a lengthy treatment history with Plaintiff, opined that "at this point – work does not seem as though it's something [Plaintiff] can manage." (T at 520-21). Dr. Lesley McGalliard, a treating physician, reported that Plaintiff had "[s]ignificant mental health issues with illicit drug abuse[,] notably methamphetamine and cocaine." (T at 435). She opined that Plaintiff was "certainly … unfit to work giv[en] significant mental health issues as [well] as some ongoing issues with drug abuse." (T at 435). Dr. Reznicek, who treated Plaintiff during his incarceration, found that he "lacks volition" and was "socially inept, anti-social," and "unlikely to stay sober for a traditional work setting . . . ." (T at 406). Dr. Barnard opined that with Plaintiff's "easy fatigability, it is not probable that he could be gainfully employed in any capacity." (T at 336).

The ALJ concluded that Plaintiff retained an RFC "consistent with competitive employment despite his substance abuse." (T at 38). None of the medical opinions support this conclusion. Moreover, the ALJ rejected the various

DECISION AND ORDER – LEINGANG v COLVIN 14-CV-03116-VEB

medical opinions piecemeal, without considering the fact that their consistency with each other should have bolstered the reliability of the whole.

Further, the ALJ's RFC determination, which supposedly included the impact of Plaintiff's substance abuse (T at 34), contained only one serious mental health limitation (occasional, superficial contact with the general public). (T at 31).  In other words, according to the ALJ, Plaintiff could perform sustained work activities in an ordinary work setting on a regular and continuing basis within customary tolerances of employers' rules regarding sick leave and absence (T at 31), even while he was abusing alcohol, cocaine, methamphetamines, and marijuana. (T at 34-35).  This conclusion is contrary to the medical evidence, including the opinions of several treating providers, as outlined above.  The ALJ did not properly perform the substance abuse analysis and a remand is required for this reason.

### 3.        Step Five Analysis

At step five of the sequential evaluation, the burden is on the Commissioner to show that (1) the claimant can perform other substantial gainful activity and (2) a "significant number of jobs exist in the national economy" which the claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984). If a claimant cannot return to his previous job, the Commissioner must identify specific jobs existing in substantial numbers in the national economy that the claimant can perform. See

*Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir.1995). The Commissioner may carry this burden by "eliciting the testimony of a vocational expert in response to a hypothetical that sets out all the limitations and restrictions of the claimant." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir.1995). The ALJ's depiction of the claimant's disability must be accurate, detailed, and supported by the medical record. *Gamer v. Secretary of Health and Human Servs.*, 815 F.2d 1275, 1279 (9th Cir.1987).  "If the assumptions in the hypothetical are not supported by the record, the opinion of the vocational expert that claimant has a residual working capacity has no evidentiary value." *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984).

Here, the ALJ received testimony from Paul Prachyl, a vocational expert (the "VE"), and relied on the VE's opinion to form his step five findings. (T at 42). Plaintiff contends that the ALJ's step five analysis was flawed because his counsel was not permitted to effectively cross-examine the VE.  The ALJ did disallow a proposed question by Plaintiff's counsel, finding that the question was inappropriately phrased in medical, rather than vocational, terms. (T at 86).  This Court finds no reversible error with regard to this aspect of the ALJ's decision.  The ALJ afforded Plaintiff's counsel the opportunity to rephrase the question, but counsel declined.  (T at 87).  The ALJ then asked whether counsel had anything further to offer and counsel advised that he did not. (T at 87).  The ALJ acted within

22

DECISION AND ORDER – LEINGANG v COLVIN 14-CV-03116-VEB

his discretion in overseeing the conduct of the hearing and imposing reasonable limitations on cross-examination. *See Copeland v. Bowen*, 861 F.2d 536, 539 (9th Cir. 1988).  Moreover, Plaintiff has not shown any unfair prejudice arising from this issue.  His counsel was afforded an opportunity to continue cross-examination and rephrase the question.

However, the ALJ's step five analysis is based on upon his RFC determination.  That determination is not supported by substantial evidence for the reasons outlined above.  In particular, the ALJ's assessment of the opinion evidence and substance abuse issue were flawed.  Thus, the step five analysis will also need to be revisited on remand.

## C.    Remand

In a case where the ALJ's determination is not supported by substantial evidence or is tainted by legal error, the court may remand for additional proceedings or an immediate award of benefits. Remand for additional proceedings is proper where (1) outstanding issues must be resolved, and (2) it is not clear from the record before the court that a claimant is disabled. *See Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004).

In contrast, an award of benefits may be directed where the record has been fully developed and where further administrative proceedings would serve no useful

purpose. *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996).  Courts have remanded for an award of benefits where (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited. *Id*. (citing *Rodriguez v. Bowen*, 876 F.2d 759, 763 (9th Cir.1989); *Swenson v. Sullivan*, 876 F.2d 683, 689 (9th Cir. 1989); *Varney v. Sec'y of Health & Human Servs*., 859 F.2d 1396, 1401 (9th Cir.1988)).

Here, this Court finds that a remand for further proceedings is the appropriate remedy.  There are serious questions about Plaintiff's credibility. (T at 33).  Two non-examining State Agency review consultants assessed limitations consistent with the ALJ's RFC determination. (T at 30).  It is possible that, upon a proper substance abuse analysis, Plaintiff will be found to be disabled when all of his impairments are considered without reference to his substance abuse, but that substance abuse is material to the disability determination and benefits must be denied on that basis.  Accordingly, while the ALJ's decision cannot be sustained (because the opinion evidence was inadequately considered and the substance abuse analysis was not properly performed), this Court cannot say that it is clear from the record that

Plaintiff is entitled to benefits.  A remand for further proceedings is therefore the appropriate remedy.


## IV. ORDERS

IT IS THEREFORE ORDERED that:

Plaintiff's motion for summary judgment, Docket No.  15, is GRANTED.

The Commissioner's motion for summary judgment, Docket No. 19, is DENIED.

This case is remanded for further proceedings,

The District Court Executive is directed to file this Order, provide copies to counsel, enter judgment in favor of Plaintiff, and CLOSE this case.

DATED this 3rd day of August, 2015.


/s/Victor E. Bianchini
VICTOR E. BIANCHINI
UNITED STATES MAGISTRATE JUDGE

DECISION AND ORDER – LEINGANG v COLVIN 14-CV-03116-VEB